IRT PROPERTY COMPANY, A Georgia corporation, Plaintiff v. PAPAGAYO, INC., A North Carolina corporation, Defendant

No. 925SC912

(Filed 19 October 1993)

1. **Evidence and Witnesses § 1994 (NCI4th) — breach of lease — ambiguous lease language — parol evidence admissible**

The trial court erred by excluding parol evidence of representations made during pre-lease negotiations from an action for breach of a lease by nonpayment of rent in which

IRT PROPERTY CO. v. PAPAGAYO, INC.

[112 N.C. App. 318 (1993)]

the tenant asserted that the landlord had breached the lease by changing the property from a mall to offices. The terms of the lease are susceptible to different interpretations as to whether plaintiff had the right to change the shopping center into an office center, and are therefore unclear and ambiguous. Because the terms of the lease are ambiguous, parol evidence that would aid the jury in determining the intention of the parties would be admissible.

**Am Jur 2d, Contracts §§ 260-263.**

2. **Landlord and Tenant § 12 (NCI4th)— breach of lease—change of shopping area to offices—language of lease ambiguous— directed verdict denied**

The trial court did not err by denying a directed verdict for a tenant in a breach of lease action in which the tenant claimed that the landlord first breached the lease by changing the property from a shopping area to offices where the language of the lease was ambiguous as to the extent the landlord or its predecessor could change the property.

**Am Jur 2d, Landlord and Tenant § 230 et seq.**

**Provision in lease as to purpose for which premises are to be used as excluding other uses. 86 ALR4th 259.**

3. **Landlord and Tenant § 89 (NCI4th)— action for breach of lease—nonpayment of rent—instruction that breach by landlord relieves tenant of obligation to pay—denied**

The trial court acted correctly in an action for breach of a lease by failing to instruct the jury that a material breach by the landlord would relieve the tenant's obligation under the lease to pay rent where the lease included language which clearly and unambiguously states that the tenant is under the obligation to pay monthly rent to the landlord regardless of any defense the tenant could assert.

**Am Jur 2d, Landlord and Tenant § 570 et seq.**

4. **Landlord and Tenant § 89 (NCI4th)— breach of lease action— instruction of requirement of good faith not given—no error**

The trial court did not err in an action arising from the breach of a lease by not instructing the jury on the require- ment of good faith in exercising discretionary powers con- ferred under a contract where the record is void of any evidence

that the landlord exercised its discretionary power to change the nature or use of the shopping center in bad faith.

**Am Jur 2d, Landlord and Tenant § 570.**

5. **Landlord and Tenant § 11 (NCI4th) — breach of lease action — property changed from shopping mall to offices — quiet enjoyment — implied covenant of good faith and fair dealing**

The trial court did not err in an action for breach of a lease by not submitting the issues of the landlord's alleged breaches of quiet enjoyment and the implied covenant of good faith and fair dealing where the record did not support those contentions.

**Am Jur 2d, Landlord and Tenant § 330 et seq.**

**Breach of covenant for quiet enjoyment in lease. 41 ALR2d 1414.**

6. **Unfair Competition § 1 (NCI3d) — breach of lease — amendment to counterclaim — amendment denied — no error**

The trial court did not err in an action for breach of a lease by denying defendant's motion to amend its counterclaim to assert a claim under Chapter 75 where there was insufficient evidence to support a claim under Chapter 75.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 696.**

Appeal by defendant Papagayo from judgment entered 29 January 1992 by Judge James D. Llewellyn in New Hanover County Superior Court. Heard in the Court of Appeals 1 September 1993.

In March 1989, plaintiff IRT Property Company ("IRT") filed this action against defendant Papagayo, Inc. for breach of a lease agreement. Papagayo filed its answer asserting that it was excused or discharged from any obligations under the lease based on thirteen defenses, one being that IRT or its predecessor-in-interest breached the lease by "failing to operate, manage and maintain the Shopping Center Mall and converting the property from a Shopping Center Mall to 'key man' office suites." Further, Papagayo filed an amended answer which it asserted a counterclaim for breach of the lease's express and implied requirement that the area where Papagayo was located be operated as a retail shopping center,

for breach of express covenant of quiet enjoyment, and for breach of implied covenant of good faith and fair dealing.

On 13 January 1992, IRT filed a motion *in limine* seeking to exclude evidence of any oral representations and pre-lease negotiations differing from the terms of the lease. On that same day, the trial court granted IRT's motion in open court, specifically excluding "[a]ny oral representations made prior to . . . this lease . . . ." After trial, the jury returned a verdict finding that Papagayo breached the lease by failing to continue to pay rents due, that IRT did not breach the lease by leasing the area near Papagayo to office and service tenants, and that IRT was entitled to recover $110,133.32 in damages from Papagayo.

On 29 January 1992, Judge James Llewellyn entered judgment based on this verdict out of session and out of term by consent of the parties. From this judgment, defendant appeals.

    *Clark, Newton & Hinson, by Reid G. Hinson; and Robinson, Bradshaw & Hinson, by Robin L. Hinson, for plaintiff-appellee.*

    *Parker, Poe, Adams & Bernstein, by Charles C. Meeker and Stephen D. Coggins, for defendant-appellant.*

ORR, Judge.

In February 1985, Papagayo signed a lease agreement with IRT's predecessor to lease space on the second floor of a two-story shopping center, the Galleria in Wrightsville Beach, North Carolina, in which to operate a Mexican Restaurant. Papagayo opened its restaurant in February, 1986 and was originally successful. The other retail tenants surrounding Papagayo were not successful, however, and subsequently, they left the Galleria location. On 6 August 1987, the owners of the Galleria announced they would be renting the vacant space on the second level of the Galleria as office space. Over the next year, Papagayo experienced a decline in sales.

In 1987 and 1988, IRT purchased the shopping center in a two-step transaction and became the landlord to the businesses located in the Galleria, including Papagayo. In September 1988, Papagayo closed its restaurant and ceased to pay rent. In March, 1989, IRT instituted this suit for recovery of this rent. Papagayo counterclaimed asserting IRT breached the lease agreement. The

jury found that Papagayo breached the agreement by failing to continue to pay rents due and that IRT did not breach the agreement.

## I.

[1] On appeal, Papagayo contends that the trial court erred by excluding parol evidence of oral representations made by IRT's predecessor and pre-lease negotiations between IRT's predecessor and Papagayo's representatives. We agree.

> "The general rule is that when a written instrument is introduced into evidence, its terms may not be contradicted by parol or extrinsic evidence, and it is presumed that all prior negotiations are merged into the written instrument." . . . However, " 'if the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent, not to contradict, but to show and make certain what was the real agreement between the parties.' "

*Mosley & Mosley Builders, Inc. v. Landin Ltd.*, 87 N.C. App. 438, 442, 361 S.E.2d 608, 611 (1987), *cert. dismissed*, 322 N.C. 607, 370 S.E.2d 416 (1988) (citations omitted).

Further, "[i]f there is a latent ambiguity in the contract, preliminary negotiations and surrounding circumstances may be used to determine what the parties intended." *Jefferson-Pilot Life Ins. Co. v. Smith Helms Mulliss & Moore*, 110 N.C. App. 78, 81, 429 S.E.2d 183, 185 (1993). " 'A latent ambiguity may arise where the words of a written agreement are plain, but by reason of extraneous facts the definite and certain application of those words is found impracticable.' " *Id.* (citation omitted).

In the present case, the lease agreement states in pertinent part:

> 2.1 Lease. Landlord [IRT] hereby leases and demises to Tenant [Papagayo] those certain Premises . . . containing approximately 4,300 gross square feet of interior second floor space together with approximately 1,600 gross square feet of enclosed patio area located on the roof area of the adjoining premises . . . in the *Shopping Center* together with the nonexclusive license to use the Common Areas subject to such rules and regulations as Landlord shall adopt.
>
> . . .

IRT PROPERTY CO. v. PAPAGAYO, INC.

[112 N.C. App. 318 (1993)]

1.1 Shopping Center. The term "Shopping Center" means all that certain land and the main *mall* building and associated improvements, equipment and facilities now or hereafter erected thereon known as THE *GALLERIA* AT WRIGHTSVILLE located in New Hanover County, State of North Carolina, as more particularly described on Exhibit "A" attached hereto and by this reference made a part hereof, as same may be altered, expanded or reduced from time to time. Detached buildings shall not be deemed a part of the Shopping Center.

. . .

4.7 Common Area Control/Right of Relocation. Landlord grants to Tenant and his agents, employees, and customers a nonexclusive license to use the Common Areas in common with others during the term, subject to the exclusive control and management thereof at all times by Landlord and subject, further, to the rights of Landlord set forth hereinbelow. *Landlord shall have the right at all times, in its sole discretion, to change the size, location, elevation, nature and/or use of any portion or all of the Common Areas, the Shopping Center or any part thereof as Landlord may from time to time determine,* including the right to change the size thereof, to erect buildings thereon, to sell or lease part or parts thereof, to change the location and size of the landscaping and buildings on the site, and to make additions to, subtractions from or rearrangements of said buildings.

(Emphasis added.)

The issue we must determine is whether the terms of the lease are ambiguous as to whether IRT had the right to rent open space in the Shopping Center as offices instead of retail stores, thereby changing the Shopping Center into an office center. IRT argues that the terms of Section 4.7 are unambiguous on this issue, and that this section grants it the right to rent spaces in the Shopping Center for office use. We disagree based on our conclusion that the terms are ambiguous.

First, by the title and contents of Section 4.7, it is unclear whether Section 4.7 was meant to apply to the Shopping Center or just to the Common Areas. Section 4.7 is entitled "Common Area Control/Right of Relocation", which does not include the Shopping Center, and the paragraph following this title deals almost

IRT PROPERTY CO. v. PAPAGAYO, INC.

[112 N.C. App. 318 (1993)]

exclusively with the Common Areas. Section 4.7 grants the tenant a license to use the Common Areas subject to the Landlord's right to control and manage these Common Areas. The paragraph then states that this right to use the Common Areas is "subject, further, to the rights of Landlord set forth hereinbelow." Following this sentence is the only reference to the Shopping Center in this section which states:

> Landlord shall have the right at all times, in its sole discretion, to change the size, location, elevation, nature and/or use of any portion or all of the Common Areas, the Shopping Center or any part thereof as Landlord may from time to time determine . . . .

Thus, the sole reference to the Shopping Center in Section 4.7 is contained in a sentence that the preceding sentence establishes as limiting the right of the tenant to use the Common Areas. Aside from this one reference to the Shopping Center, Section 4.7 is concerned solely with the control of the Common Areas, as stated in the title. Additionally, we note that the word "Shopping Center" seems to have been inadvertently placed in this sentence. By merely changing the comma preceding the word Shopping Center to an "of" so that the sentence reads "Landlord shall have the right . . . to change the . . . nature and/or use of any portion or all of the Common Areas [of] the Shopping Center", this sentence would be consistent with the rest of the paragraph. Thus, the title and the content of Section 4.7 make it unclear whether this section applies to the Shopping Center, and it is therefore unclear whether this section grants IRT the right to change the Shopping Center.

Second, even if the language of Section 4.7 were interpreted to give IRT the right to change the Shopping Center, in light of Sections 1.1. and 2.1 and in light of the fact that the lease does not define "nature" or "use", it is unclear to what extent IRT can change the Shopping Center under this section. Section 2.1 of the lease purports to rent space to Papagayo in a "Shopping Center". Section 1.1 of the lease defines this "Shopping Center" as "all that certain land and the main mall building and associated improvements, equipment and facilities now or hereafter erected thereon known as THE GALLERIA AT WRIGHTSVILLE". The terms "mall" and "Galleria" are words normally associated with a shopping area featuring a variety of retail stores in which to

shop. Thus, as Papagayo argues, the lease could be interpreted as impliedly promising to continue to rent the space surrounding Papagayo's restaurant solely to retail stores, and this promise would limit IRT's right to change the Shopping Center under Section 4.7.

On the other hand, the lease does not contain an express promise to rent the surrounding space solely to retail stores. Therefore, as IRT argues, the lease could be interpreted as giving IRT the right under Section 4.7 to change the Shopping Center to include office areas surrounding Papagayo's restaurant.

Thus, the terms of the lease are susceptible of different interpretations, and are, therefore, unclear and ambiguous. See St. Paul Fire & Marine Ins. Co. v. Freeman-White Associates, Inc., 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988) ("The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous.").

In Parker Marking Systems, Inc. v. Diagraph-Bradley Industries, Inc., 80 N.C. App. 177, 341 S.E.2d 92, disc. review denied, 317 N.C. 336, 346 S.E.2d 502 (1986), this Court stated the applicable rules for interpreting unclear, ambiguous language in a contract. The Court stated:

> While clear and unambiguous contracts may be interpreted by the court as a matter of law, if the language used by the parties is ambiguous and their intention unclear, interpretation of the contract is for the jury under proper instructions from the court. . . . Extrinsic evidence relating to the agreement is competent to show the intentions of the parties and to clarify the terms of the contract.

Id. at 181, 341 S.E.2d at 95 (citations omitted).

In the present case, the meaning of the terms found in Section 4.7 of the lease are also unclear and ambiguous as they relate to Sections 1.1 and 2.1 of the lease. Papagayo offered evidence of pre-lease negotiations in order to explain these terms, which evidence the trial court excluded. Papagayo properly preserved the testimony which was excluded by the trial court as required for this matter to be heard on review. Currence v. Hardin, 296 N.C. 95, 249 S.E.2d 387 (1978). Because the terms of the lease are ambiguous, parol evidence that would aid the jury in determining the intention of the parties would be admissible. See Asheville Mall, Inc. v. F.W. Woolworth Co., 76 N.C. App. 130, 331 S.E.2d

772 (1985); *See also Mosley*, 87 N.C. App. 438, 361 S.E.2d 608 (1987). Our review of the evidence excluded shows that it would be admissible to aid the jury in determining the intention of the parties, and the trial court erred, therefore, in excluding this evidence of oral representations made by IRT's predecessor and pre-lease negotiations between Papagayo's representatives and IRT's predecessor. Further, the trial court's erroneous exclusion of this parol evidence was prejudicial to Papagayo as it was necessary to determine IRT's obligations under the lease and thus to determine whether IRT breached the lease.

II.

[2] Papagayo also contends that the trial court erred by denying its motion for a directed verdict based on the argument that the terms of the lease unambiguously state that the lease was for space located in a shopping area and that IRT's predecessor materially breached the lease by changing this shopping area to an office area. Based on our holding above that the language of the lease is ambiguous as to the extent IRT's predecessor or IRT could change the Shopping Center, we find no error.

III.

[3] Next, Papagayo contends that the trial court erred by failing to instruct the jury that a material breach by IRT would relieve Papagayo's obligation under the lease to pay IRT rent. We disagree.

Section 3.1 of the lease states:

Tenant shall pay to Landlord, without notice, demand, reduction, setoff or any defense, a minimum annual rental . . . of . . . ($64,500.00) payable in equal monthly installments of . . . ($5,375.00) each in advance on or before the first day of each month.

This language clearly and unambiguously states that Papagayo is under the obligation to pay monthly rent to IRT, regardless of any defense Papagayo could assert. Thus, the trial court did not err in declining to instruct the jury that a material breach by IRT would relieve Papagayo from its obligation to pay rent on a monthly basis. We note that this provision would not preclude Papagayo from recovering rents paid under this provision should Papagayo prevail on the merits.

IRT PROPERTY CO. v. PAPAGAYO, INC.

[112 N.C. App. 318 (1993)]

IV.

[4]  Papagayo also contends that the trial court erred by declining to instruct the jury on the requirement of good faith in exercising discretionary powers conferred under a contract. We disagree.

The record is void of any evidence that IRT exercised its discretionary power to change the "nature" or "use" of the Shopping Center in bad faith. The trial court did not err by refusing to instruct the jury on the requirement of good faith.

V.

[5]  Next, Papagayo contends that the trial court erred by not submitting the issues of IRT's alleged breach of quiet enjoyment and IRT's alleged breach of implied covenant of good faith and fair dealing. We disagree.

The evidence contained in the record does not support Papagayo's contentions that IRT breached Papagayo's quiet enjoyment or implied covenant of good faith and fair dealing. Accordingly, the trial court did not err in refusing to submit these issues to the jury. *See Cutts v. Casey*, 278 N.C. 390, 420, 180 S.E.2d 297, 313 (1971) (when it is clear that plaintiff has shown no right to relief, the judge will grant defendant a directed verdict at the close of plaintiff's evidence and not submit the issue to the jury).

VI.

[6]  Finally, Papagayo contends that the trial court erred by denying its motion to amend its counterclaim to assert a claim under Chapter 75. We disagree.

"Amendment of pleadings after a response has been served is only by 'leave of court . . . and leave shall be freely given when justice so requires.'" *Chicopee, Inc. v. Sims Metal Works, Inc.*, 98 N.C. App. 423, 430, 391 S.E.2d 211, 216, *defendant's disc. review denied*, 327 N.C. 426, 395 S.E.2d 674, *plaintiff's disc. review allowed*, 327 N.C. 426, 395 S.E.2d 674, *defendant's disc. review denied*, 327 N.C. 426, 395 S.E.2d 675 (1990); N.C.R. Civ. P. 15(a). "[T]he grant or denial of an opportunity to amend pleadings is within the discretion of the trial court . . . ." *Coffey v. Coffey*, 94 N.C. App. 717, 722, 381 S.E.2d 467, 471, *disc. review allowed*, 325 N.C. 705, 388 S.E.2d 450 (1989), *review dismissed*, 326 N.C. 586, 391 S.E.2d 40 (1990) (citation omitted). It is an abuse of this discretion, however, to refuse to grant leave to amend without

any justifying reason appearing for the denial. *Id.* " 'Absent any declared reason for denial of leave to amend, the appellate court may examine any apparent reasons for such denial.' " *Id.*

In the present case, the trial court did not state its reasons for denying Papagayo's motion to amend its pleadings. "Although a trial court is not required to state specific reasons for denial of a motion to amend, . . . reasons that would justify a denial are '(a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments.' " *Chicopee, Inc.*, 98 N.C. App. at 430, 391 S.E.2d at 216 (citations omitted).

Our review of the record shows that insufficient evidence exists to support a claim under Chapter 75 against IRT. Thus allowing Papagayo to amend its pleadings to include such a claim would be futile, and the trial court did not err in denying Papagayo's motion to amend.

Reversed and Remanded.

Judges WELLS and McCRODDEN concur.