Tommy E. Plambeck, appellant, v. Union Pacific Railroad Company, a corporation, appellee.

509 N.W.2d 17

Filed December 23, 1993.   No. S-91-747.

Thomas A. Gleason for appellant.

Richard J. Hautzinger and Kathleen J. Ford for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Fahrnbruch, and Lanphier, JJ., and Grant, J., Retired.

White, J.

Tommy E. Plambeck appeals from a decision of the Nebraska Court of Appeals that affirmed the summary judgment granted by the district court in favor of appellee, Union Pacific Railroad Company (Union Pacific). The district court held that a general release and covenant not to sue (the

release) barred Plambeck's cause of action. We reverse the decision of the Court of Appeals that affirmed the decision of the district court, and we remand the cause for further proceedings.

Plambeck began working for Union Pacific in June 1978 as a photographer in its public relations department. Plambeck was a nonunion employee, and his employment was not the subject of a written contract or labor agreement.

In July 1979, Plambeck fell and injured his back while on assignment for Union Pacific. From the time of his injuries until 1986, Plambeck worked intermittently because of his injuries. Plambeck underwent back surgery in February 1986 and then remained off work. In September, Plambeck met with his supervisors and discussed his rehabilitation and return to work, with a target date of October. Plambeck contends that his supervisors continually reassured him that he would not lose his job.

Toward the end of 1986, Union Pacific laid off employees pursuant to an involuntary force-reduction program. Plambeck was one of the employees who was terminated under the program. Plambeck received $16,000 as severance pay and was asked to sign a release form. Plambeck and his counsel added a paragraph to the release form, and then, on December 30, Plambeck signed the release. The release, including the paragraph added by Plambeck, states:

> In consideration of the benefits provided me under the terms and conditions of the Union Pacific Railroad Company Involuntary Force Reduction Program, I hereby release and forever discharge Union Pacific Railroad Company, Missouri Pacific Railroad Company, The Western Pacific Railroad Company, their parents, subsidiaries ("the Company"), officers, agents and employees *from any and all claims, causes of action and liabilities of any kind or nature arising out of my employment at, or termination of my non-agreement employment* from Union Pacific Railroad Company, Missouri Pacific Railroad Company, The Western Pacific Railroad Company, or any of their subsidiary companies. I further agree not to institute any proceedings against the

Company, its officers, agents and employees, *based on any matter relating to my employment at, or termination of my non-agreement employment* from the Company.

This General Release and Covenant Not to Sue is subject to the following exceptions. Tom Plambeck reserves to himself, and does not waive, impair, or prejudice his claims against the Union Pacific Railroad Company, or its subsidiaries, employees, agents, or assigns *his claims arising from a fall from a ladder at the Omaha Shops occurring July 13, 1979,* and presently in suit at Doc. 817, No. 210, District Court of Douglas County, Nebraska, *or any other claims available related to his health* for which Union Pacific Railroad Company, its subsidiaries, employees, agents, or assigns may be liable.

I acknowledge that this Program and this document have been fully explained to me and I understand its terms.

(Emphasis supplied.)

The pending action referred to in the second paragraph of the release was Plambeck's personal injury claim under the Federal Employers' Liability Act. In that action, a jury awarded Plambeck $9,100.37.

In November 1989, Plambeck filed a wrongful termination action against Union Pacific. Plambeck alleges that under Union Pacific's written rehabilitation program, Union Pacific was required to continue to employ Plambeck. Union Pacific filed a motion for summary judgment, contending that Plambeck's action was barred by the release that he signed when he was terminated. After a hearing, the district court agreed with Union Pacific and granted summary judgment.

Plambeck appealed the summary judgment to the Court of Appeals. In that appeal, Plambeck argued that the release is ambiguous regarding which claims against Union Pacific he had relinquished and which claims against Union Pacific he had preserved. The Court of Appeals held, as a matter of law, that the language of the release is not ambiguous.

In the present appeal, Plambeck argues that the district court erred in granting the summary judgment because there is a genuine issue of material fact regarding the interpretation of the

release signed by Plambeck. Specifically, Plambeck contends that the language "or any other claims available related to his health for which Union Pacific . . . may be liable" in the paragraph added by Plambeck modifies or negates the general release from liability related to his termination. Plambeck further contends that extrinsic evidence will establish that his intent in adding the second paragraph was to permit him to assert any claims related to his injuries, including the fact that he was wrongfully terminated because of his injuries. Plambeck argues that because the language is ambiguous, there is a question of fact whether his claim for wrongful termination is barred by the release, and, thus, the summary judgment was improper.

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *VonSeggern v. Willman, ante* p. 565, 508 N.W.2d 261 (1993); *Gould v. Orr, ante* p. 163, 506 N.W.2d 349 (1993); *Economy Preferred Ins. Co. v. Mass*, 242 Neb. 842, 497 N.W.2d 6 (1993). Whether the summary judgment was proper depends on whether the language of the release is ambiguous. If the release is not ambiguous, then summary judgment was proper; if the release is ambiguous, then summary judgment was not proper because the court faced a question of fact—how to interpret the release.

Whether a contract is ambiguous is a question of law. When an appellate court is deciding questions of law, the court has an obligation to resolve the questions independent of the conclusions reached by the trial court. *VonSeggern, supra*; *Bell Abstract & Title v. Caro, Inc.*, 243 Neb. 576, 500 N.W.2d 834 (1993); *Crowley v. McCoy*, 234 Neb. 88, 449 N.W.2d 221 (1989); *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989). A document is ambiguous if a word, phrase, or provision in the document has, or is susceptible of, at least two reasonable but conflicting interpretations. *Crowley, supra*; *Knox, supra*. If a contract is ambiguous, the meaning of the contract is a question of fact, and a court may consider extrinsic evidence to

determine the meaning of the contract. *State v. Commercial Casualty Ins. Co.*, 125 Neb. 43, 248 N.W. 807 (1933). See, *IRT Property Co. v. Papagayo, Inc.*, 112 N.C. App. 318, 435 S.E.2d 565 (1993); 30 Am. Jur. 2d *Evidence* § 1069 (1967).

Although the language of a document may be clear and unambiguous, a latent ambiguity exists when collateral facts make the meaning of the contract uncertain. 4 Samuel Williston, A Treatise on the Law of Contracts § 627 (Walter H. Jaeger 3d ed. 1961). See, also, *Younker Brothers, Inc. v. Westroads, Inc.*, 196 Neb. 168, 241 N.W.2d 679 (1976) (recognizing a latent ambiguity in a lease agreement); *Countryside Casualty Co. v. Grant*, 269 Ark. 526, 601 S.W.2d 875 (1980); *IRT Property Co., supra*. For example, this court, in contested-will cases, has stated that if two or more persons satisfy a description of one devisee, there is a latent ambiguity, and extrinsic evidence is admissible to disclose and remove that ambiguity. *In re Estate of Bernstrauch*, 210 Neb. 135, 313 N.W.2d 264 (1981).

In the present case, the collateral fact is Plambeck's claim for wrongful termination based on his health problems. In light of this particular claim, the release is subject to at least two reasonable but conflicting interpretations. Plambeck's claim could fall within either the *release* from liability for termination or the *exception* to the release for health-related claims. As a matter of law, we find that Plambeck's claim illustrates an ambiguity which cannot be resolved from the face of the document.

When a contract is ambiguous, the meaning of the contract is a question of fact, and extrinsic evidence is admissible to remove the ambiguity. There exists a genuine issue of material fact regarding the meaning of the release, and, thus, summary judgment was improper. We reverse, and remand the cause for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

CAPORALE, J., dissenting.

I must dissent. In the first instance, it seems to me that the majority overlooks a most basic tenet of contract law, namely, that any ambiguity in a contract will be construed against the

drafter and be given the construction the other party would be fairly justified in giving it. See *Brockley v. Lozier Corp.*, 241 Neb. 449, 488 N.W.2d 556 (1992). No one claims there is any ambiguity (latent, patent, or of any other description) in the portion of the document drafted by the defendant-appellee employer, Union Pacific Railroad Company. Rather, the purported ambiguity resides in the portion of the document drafted by the plaintiff-appellant employee, Tommy E. Plambeck. Thus, if the claimed ambiguity actually existed, it would have to be construed against the employee.

But a review of the relevant rules demonstrates that there is no ambiguity. It must be borne in mind that the fact that the parties to a document have or suggest opposing interpretations does not necessarily, or by itself, compel a conclusion that the document is ambiguous. *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993). Quite the contrary, a contract must receive a reasonable construction so as to give effect to the intention of the parties and carry out, rather than defeat, the inherent purpose for which it was executed. See *General Motors Acceptance Corp. v. Blanco*, 181 Neb. 562, 149 N.W.2d 516 (1967). Moreover, a contract must be construed as a whole, and, if possible, effect must be given to every part thereof. *Baker's Supermarkets, supra.*

The termination is the reason the employee received $16,000 and signed the contract. That being so, it cannot reasonably be contended that the employee reserved the right to challenge the termination of his employment even if the termination arose out of the condition of his health. Thus, the reservation of "any other claims available related to his health" cannot reasonably be said to refer to health conditions resulting in the termination of employment, but to other health claims, such as might arise because the employee was exposed to some delayed-action disease-producing agent or as might arise from a health condition unknown at the time the contract was executed. Known health claims which the employee intended exempted from the general terms of the agreement should have been specifically itemized by him, as he did the then-pending lawsuit.

It seems to me the Court of Appeals correctly applied the law

of contracts as we had heretofore declared it to be. Since the majority opinion does not directly overrule any of our prior cases, what the law may be at the moment is, regrettably, anyone's guess.

HASTINGS, C.J., joins in this dissent.