RONALD R. MATTHEWS AND CHUCK STANLEY, PLAINTIFFS v. JAMES E. DAVIS, DEFENDANT

No. COA07-946

(Filed 5 August 2008)

**1. Appeal and Error— preservation of issues—assignments of error—supporting argument or case law required**

Assignments of error which were not supported by argument or case law were deemed abandoned.

**2. Construction Claims— breach—unworkmanlike construction of sea wall—motion to dismiss denied**

The trial court did not err by denying defendant's motion to dismiss a breach of contract claim which arose from the construction of a rip rap sea wall and subsequent erosion. The court's findings support its conclusion that the sea wall was constructed in an unworkmanlike manner so that soil and sand could pass through the fabric under the rip rap and erosion could occur.

**3. Damages and Remedies— repair of sea wall—conflicting evidence—nonjury trial**

The trial court did not err in a nonjury trial in its award of damages for repair of a sea wall built in an unworkmanlike manner where there was evidence to support the damages awarded, even though the award was less than the cost of repair estimated by plaintiffs' expert. The credibility and weight of the evidence was for the court.

Appeal by defendant from judgment entered 22 January 2007 by the Honorable D. Jack Hooks, Jr. in Onslow County Superior Court. Heard in the Court of Appeals 20 February 2007.

*Lanier, Fountain & Ceruzzi, by John W. Ceruzzi, for plaintiff-appellee.*

*Jeffrey S. Miller for defendant-appellant.*

BRYANT, Judge.

Defendant James E. Davis appeals from an order awarding damages to plaintiff Chuck Stanley in the amount of $9,243.75, with interests and costs. We affirm the award.

Plaintiffs Ronald Matthews and Chuck Stanley owned adjacent lots in Stella, North Carolina along the White Oak River. In the early summer of the year 2000, Davis met with plaintiffs and as a result of that meeting entered into an oral contract for the construction of a sea wall. The cost of this sea wall to each plaintiff was $9,243.75.

The sea wall was a "rip rap" construction—large stones laid over a small slope extending out approximately 12 feet and standing approximately 8 feet high. Beneath the layer of stone lay a woven filter cloth, and beneath the cloth was sandy soil. The sea wall construction was completed and paid for by 6 November 2000.

Although plaintiffs lots adjoined, the grading and landscaping of their respective properties was "significantly different." The Matthews property had "sock tile" (a six inch, corrugated black plastic pipe with a nylon sock) in place to assist in draining. The Stanley property did not. The Matthews property was graded to a "shallower or lower grade" with landscape features such as burlap laid over planting beds to enable roots to take hold, rye grass and a row of bushes. The Stanley property did not have the same grade or the landscaping.

By early to mid December 2000, approximately a month after completion of the sea wall, erosion was noted as a result of soil washing from behind the sea wall, leaving large holes on the surface of the Stanley lot. There was some erosion of the Matthews property during this same period but significantly less than the Stanley property. Plaintiffs brought suit for breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose, and unfair and deceptive trade practices.

At trial, plaintiffs submitted the testimony of John Louis Eddy, a professional consulting engineer, who testified as an expert in the field of geotechnical and water resource engineering. In his initial observation of the plaintiffs' properties, Eddy testified that "[t]here was some loss of soil from the slope, movement of rip-rap erosion at the top of the drain. . . . There were holes in the fabric and obviously, the fabric was not retaining the soil . . . ."

The fabric used in the sea wall was woven. Eddy testified that "the fabric may not have been the appropriate fabric for use at the site. The soil particles[, relatively fine grain silty sand,] are fine enough that they can go through the woven fabric . . . ." The mechanism for that movement being the flow of water.

Eddy also observed "that the fabric had been placed with the machine direction parallel to the slope so that you have horizontal joints in the fabric. So when there's tension in that fabric, it tends to pull apart and go down slope leaving openings." The standard way to install the fabric is vertically, or perpendicular to the shoreline, rather than horizontally. In his opinion the slope of the rip-rap wall was also too steep to remain stable. "It wouldn't take much to upset [the rip-rap] and cause [the stones] to move down the slope." And, as there was no cushion layer of small stones between the fabric and the large stones laid on it, the result was that jagged holes appeared in the fabric from the tension created by the rip-rap. According to Eddy the purpose of the fabric under the rip-rap in the sea wall was "to serve as a separation layer between the rip-rap and the soil and retain the soil. . . . [I]f you punch holes in the fabric, you're going to loose [sic] soil through those holes where it was intended to hold it in place."

Eddy testified that "[he] reached the conclusion that there had not been adequate surface and sub-surface drainage installed. A rip-rap blanket like that is routinely installed to handle sub-surface drainage issues, but obviously with the problems with the fabric it couldn't perform that function." When asked whether he formed an

opinion satisfactory to himself to a reasonable degree of engineering certainty as to the cause of the serious distress observed in the rip-rap wall on plaintiffs' properties, Eddy responded, "that there were problems with the design and construction of the rip-rap wall, basically that the proper fabric was not used." When asked whether he formed an opinion satisfactory to himself to a reasonable degree of engineering certainty as to whether the rip-rap wall appeared to be capable of performing the function for which it was intended, Eddy responded, "[t]hat it was not."

Furthermore, Eddy testified that the rip-rap wall "does not meet the standard of first-rate workmanship . . . ." "[T]he rip-rap is in a marginally stable condition borderline incipient failure . . . [meaning] it wouldn't take much for it to come down."

At the conclusion of the plaintiffs' evidence, the trial court dismissed all but the claims for breach of express warranty and general breach of contract. At the conclusion of the evidence, the trial court found and concluded that the construction of the sea wall was in accordance with Davis's design and such was not constructed in a workmanlike manner. The orientation of the filter fabric, to be laid in a workmanlike manner, should have been perpendicular to the shoreline rather than parallel, and holes in the fabric, created by stakes driven through it to hold the fabric in place during construction, ultimately allowed soil and sand to pass through the fabric and erode plaintiffs' lots. The trial court denied Matthews' claim despite the conclusion that the sea wall was constructed in less than a workmanlike manner on the basis that Matthews evidenced little to no damage to his property. The trial court awarded Stanley $9,243.75. Davis appealed.

---

Davis presents four questions on appeal: whether the trial court erred in (I) denying Davis's motion to dismiss at the end of plaintiff's evidence; (II) awarding damages to Stanley for poor construction of the sea wall; (III) entering judgment for Stanley; and (IV) awarding Stanley $9,243.74.

[1] We note questions II and III are not supported by argument or case law, and according to our rules of appellate procedure those assignments of error are deemed abandoned. *See* N.C. R. App. P. 28(b)(6) (2007) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

*I*

**[2]** Davis argues the trial court erred in denying his motion, pursuant to Civil Procedure Rule 41(b), to dismiss plaintiffs' breach of contract claim. Davis argues there was no showing the sea wall caused any damage or harm to the property of either plaintiff, and he invites this Court to reexamine the facts.

Under the North Carolina Rules of Civil Procedure, Rule 41(b)

[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

N.C.R. Civ. P. 41(b) (2007). When a motion to dismiss pursuant to Rule 41(b) is made, "the judge becomes both the judge and the jury; he must consider and weigh all competent evidence before him; and he passes upon the credibility of the witnesses and the weight to be given their testimony." *Miles v. Carolina Forest Ass'n*, 167 N.C. App. 28, 34, 604 S.E.2d 327, 332 (2004) (citation omitted). "The trial judge may weigh the evidence, find the facts and sustain defendant's Rule 41(b) motion at the conclusion of plaintiff's evidence even though plaintiff has made out a prima facie case which would have precluded a directed verdict for defendant in a jury trial." *Childers v. Hayes*, 77 N.C. App. 792, 794, 336 S.E.2d 146, 148 (1985) (citation omitted). "Dismissal under Rule 41(b) is left to the sound discretion of the trial court and will not be disturbed on appeal in the absence of a showing of abuse of discretion." *In re Pedestrian Walkway Failure*, 173 N.C. App. 237, 247, 618 S.E.2d 819, 826 (2005) (citation omitted).

"As a fact-finder, however, the trial judge must find the facts on all issues raised by the pleadings, and state his conclusions of law based thereon, in order that an appellate court may determine from the record the basis of his decision." *McKnight v. Cagle*, 76 N.C. App. 59, 65, 331 S.E.2d 707, 711 (1985) (citations omitted). Still, where a party on appeal makes only a general exception to the denial of a Rule 41(b) motion and fails to direct the attention of this Court to any contested findings of fact or supporting evidence, that party does not bring up for review the findings of fact or the evidence on which those findings are based. *Miles*, 167 N.C. App. at 35, 604 S.E.2d at 332 (citations omitted). Where the trial court's findings

of fact are not brought up for our review, "the appeal presents the question of whether the findings support the court's inferences, conclusions of law, judgment, and whether error appears on the face of the record." *Id.*

"To state a claim for breach of contract, the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach." *Jackson v. Associated Scaffolders & Equip. Co.*, 152 N.C. App. 687, 692, 568 S.E.2d 666, 669 (2002) (citation omitted). "[W]here the cause of action is a failure to construct in a workmanlike manner . . ., plaintiff[s'] pleading should allege wherein the workmanship was faulty . . . ." *Cantrell v. Woodhill Enterprises, Inc.*, 273 N.C. 490, 497, 160 S.E.2d 476, 481 (1968) (citation omitted).

Here, the parties do not dispute the existence of a valid contract to construct a sea wall. Plaintiffs brought an action for breach of contract alleging "the Defendant failed to construct the rip-rap wall in a workmanlike and satisfactory manner which has caused distress, erosion and subsidence problems . . . ."

At the conclusion of the presentation of the evidence, the trial court made the following findings:

13. In the construction of the sea wall, driving the stakes through the fabric material into the sloping soil, and then placing the heavier stones upon the fabric material, as well as the action of the waves and heavy rain upon the fabric cloth with holes punched in it for these stakes, will and did allow soil to pass through the sea wall, and washing and erosion to occur.

14. The fabric on the sea wall, rather than being laid parallel to the White Oak River, should have been laid perpendicular to the shore line, or vertically, to be laid in a workmanlike manner. Further driving the stakes through the fabric constituted construction in less than a workmanlike manner.

Based on these findings the trial court concluded

[t]he actual construction of this sea wall in accordance with the design by the defendant Davis was not in a workmanlike manner. The stakes driven through the sea wall, particularly through the filter fabric, and the horizontal placement of that filter fabric, ultimately allowed soil and sand to pass through the fabric and erosion to occur.

We hold that the trial court's findings support its conclusion that defendant's construction of the sea wall was constructed in an unworkmanlike manner, which allowed soil and sand to pass through the fabric and erosion of plaintiff Stanley's land to occur. Therefore, this assignment of error is overruled.

## IV

[3] Defendant next argues the trial court erred in awarding Plaintiff Stanley damages of $9,243.75. We disagree.

"The trial court's authority to award damages in a breach of contract action is well established." *Southern Bldg. Maintenance v. Osborne*, 127 N.C. App. 327, 331, 489 S.E.2d 892, 895 (1997); *see also Terry's Floor Fashions, Inc. v. Crown General Contractors, Inc.*, 184 N.C. App. 1, 14-15, 645 S.E.2d 810, 819 (2007) (defendant's argument contesting a trial court's award overruled where, in a non-jury trial, the trial court was charged with determining the credibility and weight of the evidence and had competent evidence to support its award). The party claiming these damages bears the burden of proving its losses with reasonable certainty. *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 546, 356 S.E.2d 578, 585 (1987) (citation omitted). While the reasonable certainty standard requires something more than "hypothetical or speculative forecasts," it does not require absolute certainty. *McNamara v. Wilmington Mall Realty Corp.*, 121 N.C. App. 400, 407-08, 466 S.E.2d 324, 329 (1996) (citation omitted).

And, "[w]hile the amount of damages is ordinarily a question of fact, the proper standard with which to measure those damages is a question of law. Such questions are, therefore, fully reviewable by this Court." *Olivetti*, 319 N.C. at 548, 356 S.E.2d at 586-87 (citations omitted).

Plaintiffs presented testimony from expert witness Engineer Eddy regarding the cost of stabilizing the sea wall. Eddy testified there was more than one repair option, but regardless of what option plaintiffs chose, the underlying fabric in the sea wall would need to be removed because it was inadequate to retain the soil while allowing any water coming off plaintiffs' properties to pass through.

Eddy testified that in his eighteen year practice he has designed stabilization projects and solicited bids from contractors to carry out the construction. When asked about his familiarity with construction costs for a repair project of the plaintiffs' lots, Eddy responded "[he]

IN RE S.D.R.

[191 N.C. App. 552 (2008)]

[has] construction projects all over the state where [he] has sought bids or negotiated contracts with contractors and [has] been responsible for helping owners sort out among the bids and selecting contractors to do work of this nature." And, in his opinion, the cost to repair plaintiffs' lots is $20,000 per lot. Eddy testified that of the $20,000, approximately $5,000 would be for moving soil while the repair cost remainder accounted for time and materials.

The trial court found the estimated cost of repair to bring the sea wall to a properly constructed and functioning sea wall would be $20,000 per lot, including $5,000 for additional soil grading between the plaintiffs' lots. But, the original cost of the sea wall to each plaintiff was $9,243.75. From this the trial court concluded that "in considering the measure of damages in this matter that the cost of repair of $20,000 per lot would be inappropriate in that it includes design, grading and work for which this defendant and these plaintiffs did not originally contract." The trial court concluded "the proper award of damages to plaintiff Stanley should be $9243.75[,]" the amount Stanley contracted to build the sea wall.

We note that as this was a non-jury trial the trial court was charged with determining the credibility and weight of the evidence presented, and we hold there was competent evidence admitted to support a $9,243.75 award to Stanley. Accordingly, this assignment of error is overruled.

Affirmed.

Judges HUNTER and JACKSON concur.