MAJEWSKI ENTERPRISES, INC., Plaintiff v. THE PARK AT LANGSTON, INC.,
Defendant

No. COA10-496

(Filed 3 May 2011)

**1. Damages and Remedies— amount and certainty—enforceable oral contract—excessive water and sewer credits**

The trial court did not err by finding that plaintiff had an enforceable oral contract with its builders such that damages based on defendant's receipt of excessive water and sewer credits could be properly awarded. However, the case was remanded for further findings specifically determining the damages plaintiff had suffered thus far, for findings related to the certainty of damages that may later arise, and for entry of judgment for the amount of damages which had been established with reasonable certainty.

**2. Appeal and Error— preservation of issues—failure to raise at trial**

Although defendant contended that plaintiff's proper cause of action was for rescission of the parties' contract based on mutual mistake of fact, defendant failed to preserve this issue since he did not raise it at trial as required by N.C. R. App. P. 10(a)(1).

Appeal by Defendant from judgment entered 28 August 2009 and order entered 10 September 2009 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 2 November 2010.

*Michael W. Strickland & Associates, P.A., by Michael W. Strickland, for Plaintiff-Appellee.*

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for Defendant-Appellant.*

BEASLEY, Judge.

The Park at Langston, Inc. (Defendant) appeals from the trial court's judgment in favor of Majewski Enterprises, Inc. (Plaintiff), concluding Defendant breached an enforceable agreement between the developer parties by collecting a disproportionate share of credits from the Town of Cary (Town), which were intended to reimburse the parties for certain costs incurred in the installation of water and

sewer lines servicing the lots on their respective properties. We affirm in part, but because it is unclear whether the damages awarded Plaintiff were calculated with reasonable certainty or if any portion thereof was based on speculation, we remand in part for additional findings of fact regarding Plaintiff's damages.

On 4 August 2008, Plaintiff filed a complaint alleging breach of contract or, in the alternative, unjust enrichment related to the parties' respective subdivision development projects. A non-jury trial commenced on 20 July 2009, and the evidence presented tends to show the following.

Both parties to this action are real estate developers engaged in subdivision development on contiguous properties in Apex, North Carolina. Where public water and sewer services were not available to either Plaintiff or Defendant's properties, the parties learned that the Town of Cary would permit them to extend such utilities to their developments and would reimburse certain construction costs involved therein if the water and sewer lines were built with capacity to serve additional properties in the future. Based on this understanding, the parties entered into a written agreement on or about 12 October 2001 (Co-Development Agreement), which provided for their division of the costs associated with bringing the municipal water and sewer lines to their respective subdivisions and detailed their specific arrangement. They "agreed to share the development responsibilities and the costs and expenses" incurred in the extension of water and sewer services "on a pro rata basis according to the number of lots" each party undertook to develop following final site plan approval. As such, Plaintiff would pay 63% of the costs and expenses, and Defendant bore responsibility for 37% thereof. The Co-Development Agreement also provided that Plaintiff would pay Defendant the sum of $7,500.00 for supervising construction of the utility lines. Aside from a final $1,866.00 invoice from Defendant to Plaintiff, where Plaintiff had withheld the payment thereof due to a dispute regarding the bill, the parties duly paid their respective shares of the water and sewer line construction and attendant costs.

On 21 October 2002, Plaintiff and Defendant entered into a Reimbursement Contract with the Town of Cary, pursuant to which the Town agreed to reimburse the parties for costs incurred in constructing a sewer line, water line, and appurtenances (the Project) by crediting such costs against the related development, or "impact," fees related thereto. Because there were two types of development

costs associated with the Project—(i) construction costs and (ii) development fees—"[r]eimbursements [would] be made based upon the cost of construction upon completion of the Project less the estimated water and sanitary sewer development fees which [were] considered prepaid by the Developer." Of the $470,122.00 incurred in total construction costs, $353,394.00 represented the sewer line construction, and $116,728.00 represented construction of the water line. These component figures thus constituted the amount of credit available for each utility, from which each reimbursement would be debited. In this manner, "[w]ater and sanitary sewer development fees [would] be considered prepaid for [the parties' subdivisions] . . . up to the value of the water and sanitary sewer construction cost respectively identified." Accordingly, when the parties' builders went to obtain a building permit from the Town, they would "cash in" their respective credits, and the reimbursements would be docked from those values, representing the amount of impact fees deemed to have been prepaid and collected by the Town, until no credits remained. In the case that the parties' costs were not fully reimbursed, because "the cost of the project exceed[ed] their fee needs or otherwise, the Reimbursement Contract provided for cash reimbursements "as other people connect to the line and pay their fees." Specifically, "reimbursement of half of the water and sanitary sewer development fee [would] be . . . applicable for connection from other properties within the drainage area of the project" if other developers later sought to tap into the lines and thereby get the benefit of the parties' construction.

As proof of entitlement to the development fee credits, the Reimbursement Contract required a letter "signed by the Developer" authorizing the use of such credits in order for any building permit to be issued pursuant to the reimbursement arrangement. Therefore, the parties, with the Town's assistance, created certificates to provide to their builders, who could then turn the forms over to the Town when they were ready to have a particular lot permitted for sewer and water. Each certificate was signed by both parties, and allocated to each lot a water credit of $1,904.00 and a sewer credit of $2,866.00, based on the Town's development fee schedule for water and sewer connections, respectively, in place at the time. The Town would accept the signed certificate and waive its impact fees for water and sewer hook-up connection—as assessed "at the time of site development"—in lieu of requiring payment from the builder. When the parties met in 2004 to apportion the water and sewer credits, it was their intention to receive those credits at the same percentage at which

they bore costs and expenses under the Co-Development Agreement: 63% to Plaintiff and 37% to Defendant. After signing and allotting the certificates between them, the parties independently issued the certificates for individual lots in their respective subdivisions and made them available to their builders for submission to the Town when applying for building permits.

Defendant's lots were purchased by six or seven different builders. In selling its lots, Defendant would add the face-value price of the certificate by including that amount as a closing cost. Thus, a builder who purchased a lot in Defendant' s subdivision would pay Defendant not only the purchase price of the real estate but also a separate $4,770.00, representing the dollar amount of the combined water and sewer credits available for the subject property. In exchange for the additional cost, Defendant would provide the builder with a certificate at closing so that the builder could redeem the credits when it was ready to permit the lot with the Town, eliminating the builder's obligation to pay the water and sewer fees. Plaintiff's method of selling certificates to its builders was conducted differently, as it did not charge its customers any additional fee up front at closing. Where Plaintiff had only two tract builders—Old South Homes (Old South) and K Hovnanian Homes (K Hov)—these entities did not want to bear the added expense of multiple certificates at the time they purchased various lots from Plaintiff. By Plaintiff's own admission at trial, through testimony of its principal, Christopher Majewski, Plaintiff had a "gentlemen's agreement" with Old South and K Hov, providing that in lieu of paying water and sewer fees directly to the Town when they sought to permit their construction on any particular lot, the builders would instead purchase the respective certificate directly from Plaintiff at that time. Still, Mr. Majewski did not dispute that, unlike Defendant's manner of listing the certificate value on the closing statement for the sale of its lots, neither of Plaintiff's builders had a written contractual obligation to purchase any of the water and sewer certificates provided them by Plaintiff.

Defendant developed and sold its lots more quickly than Plaintiff and, accordingly, its builders obtained building permits earlier in time than Plaintiff's builders did. While unbeknownst to the parties at the time they executed the Reimbursement Contact, the water and sewer reimbursements were calculated separately by the Town such that one or the other could be fully depleted more quickly. Between 2004 and 2006, Defendant used up $64,736.00 of the available water credits but only $106,121.00 of sewer credits during roughly the same time

period, totaling a redeemed dollar amount of $170,857.00. While this amount was less than 37% of the combined water and sewer credits available to the parties ($173,945.14), the water reimbursements obtained by Defendant constituted more than half of the water credits available. Consequently, Defendant had obtained a disproportionate percentage of the water credits by the time they were exhausted, and several of Plaintiff's lots were not eligible for a water reimbursement. While additional funds for sewer reimbursement remained at Plaintiff's disposal, each of Plaintiff's built-on lots had already been credited for sewer at that time. Plaintiff sought to recoup $21,546.64, the amount Defendant allegedly received in excess of its pro rata share, but Defendant refused Plaintiff's demands.

The trial court made findings consistent with the recitation of facts above and specific computations related thereto, as detailed in the following findings of fact:

13. As a result [of Defendant's obtaining building permits more quickly than Plaintiff], Defendant obtained [$21,546.64] in water reimbursements constituting [55%] of the reimbursement paid.

14. Defendant has obtained all of its sewer credits except [$3,088.14] which remains available to Defendant.

15. If Plaintiff obtains sewer reimbursements, at the rate of [$2,886.00] per lot, for all of its' [sic] remaining lots, it will have received [$21,546.64] less than [63%] of the total reimbursement. In addition, there will be [$24,768.86] of unused sewer credit reimbursements. This sum is approximately the total of the over-payment to Defendant for water reimbursements, together with Defendant's unused sewer credits.

In Finding of Fact 16, the trial court described the overpayment as "the result of an error by Plaintiff and Defendant as to how to collect their respective percentages caused by not realizing that water and sewer reimbursements were treated independently by the Town of Cary." Findings of Fact 17 and 18 indicate that Plaintiff could "assign [its] excess sewer credits to Defendant"—which has additional unsold lots that "would be eligible for sewer credits"—and that the Town has sometimes "agreed to extend the reimbursement [expiration] date for developers who have unsold lots in their subdivisions." By judgment entered 28 August 2009, the trial court awarded Plaintiff $21,546.64 and awarded Defendant $1,866.00 based on conclusions of law that: "[t]he parties entered into an enforceable agreement pursuant to which Plaintiff was to receive [63%] and Defendant was to

receive [37%] of the water and sewer reimbursements paid by the Town of Cary"; a methodological error in collecting the reimbursements led to Defendant's receipt of $21,546.64 over its agreed upon percentage for water reimbursements; and the actions of both Defendant—"though inadvertent"—and Plaintiff—in withholding the final payment due Defendant—constituted breaches of the parties' agreement. The trial court further -ordered Plaintiff to "take any action necessary to ensure that the Town of Cary allows Defendant to utilize the sewer credits in the amount of [$21,546.64] which Plaintiff is unable to utilize because Plaintiff did not receive its share of water credits and thus has excess sewer credits."

On 8 September 2009, Defendant filed a motion to amend the judgment pursuant to Rules 52(b) and 59(e) of the North Carolina Rules of Civil Procedure, which was denied by the trial court by order entered 10 September 2009. Defendant timely filed notice of appeal from both the 28 August 2009 judgment and the 10 September 2009 order denying its motion to amend.[1]

On appeal, Defendant argues the trial court erred in finding Plaintiff had an oral agreement with its builders and contends, rather, that Plaintiff's builders had no obligation to purchase its water and sewer credits such that there could be no damages to Plaintiff. Defendant also argues that, if damages are appropriate, Plaintiff's claim was brought prematurely, rendering the trial court's award speculative. Finally, Defendant argues that the trial court's separate division of the water and sewer credits, each by the 63% to 37% ratio laid out in the Co-Development Agreement, was not contemplated or agreed to by the parties and that the appropriate remedy was grounded not in breach of contract but through an action for rescission based on mutual mistake.

Our review of an order or judgment arising from a bench trial is clearly defined:

> It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial

---

1. Defendant makes no argument directed at the 10 September 2009 order denying its motion to amend the earlier judgment and, thus, abandons his appeal from this latter order. *See* N.C.R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.")

have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*.

*Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992) (internal citations omitted).

## I.

**[1]** Defendant argues that Plaintiff cannot demonstrate any damages in this matter because it did not obligate its customers to purchase its water and sewer credits, and, in any event, Plaintiff's claim for damages is premature. We address each contention in turn.

First, Defendant alleges that even if its inadvertent taking of a higher percentage of water credits than that contemplated by the Co-Development Agreement can be considered a breach thereof, Plaintiff cannot demonstrate damages. Where Plaintiff sold its credits to the builders each time they were ready to apply for a building permit, "rather than as a component of the lot's price" like Defendant did, Defendant claims Plaintiff's builders "have no legal obligation to purchase water/sewer credits from [Plaintiff] in the first instance." As such, Plaintiff's builders are not bound to buy Plaintiff's certificates and can instead deliver the water and sewer hookup fees, which must be paid as a condition of pulling a building permit, directly to the Town of Cary. Defendant argues that Plaintiff cannot maintain this breach of contract claim where "its damages are premised only on the possibility its customers will continue to gratuitously purchase water and sewer certificates as opposed to paying these same fees to the Town."

Finding of Fact 10, however, states "Plaintiff obtained money for its certificates pursuant to an oral agreement with its' [sic] builders at the time they obtained their building permits." Defendant's argument that there is no support for this finding by the trial court focuses on an admission by Mr. Majewski that "neither [of the two builders that purchased Plaintiff's lots] "had any contractual obligation to purchase any of these certificates." Mr. Majewski agreed during his deposition that Plaintiff's builder "had no obligation, no contract, no agreement to purchase these water and sewer credits . . . [o]ther than a good Christian man going back on his word." Notwithstanding this testimony, however, it is apparent that Mr. Majewski either believed the question to be whether Plaintiff had a *written* agreement with its builders or simply did not understand that a verbal agreement may constitute a contract. While there may not have been a written con-

tract requiring Plaintiff's builders to pay Plaintiff for and utilize the reimbursement credits, Mr. Majewski described the understanding that Plaintiff's builders would indeed purchase Plaintiff's certificates as a "gentlemen's agreement." On redirect examination, Plaintiff's counsel sought to clarify Mr. Majewski's testimony, and the following colloquy transpired:

Q. Mr. Majewski, when you were looking at your deposition, I know you said that you didn't have a formal agreement. By "formal agreement," do you mean written agreement?

A. I do not have a written agreement.

Q. Did you have a verbal agreement with Old South that they would take these credits and use them?

A. I had a verbal agreement with Old South.

Q. Okay. And how about with K Hov?

A. Yeah, I'd call it a verbal agreement because they agreed. Yes, I did have a verbal agreement with K Hov as well.

This testimony constitutes competent evidence for the trial court's finding that Plaintiff had an oral agreement with its builders obligating the latter to purchase water and sewer credits from the former. As such, the existence of a valid contract with its builders supported Plaintiff's claim for damages in this action.

Defendant also argues that, "[e]ven assuming [Plaintiff] could show damages, its claim for recovery has been brought prematurely" because Plaintiff has not yet actually suffered any damages and any award by the trial court was based on speculation or conjecture.

"The trial court's authority to award damages in a breach of contract action is well established." *Southern Bldg. Maintenance v. Osborne*, 127 N.C. App. 327, 331, 489 S.E.2d 892, 895 (1997).

The party claiming these damages bears the burden of proving its losses with reasonable certainty. While the reasonable certainty standard requires something more than "hypothetical or speculative forecasts," it does not require absolute certainty.

And, "[w]hile the amount of damages is ordinarily a question of fact, the proper standard with which to measure those damages is a question of law. Such questions are, therefore, fully reviewable by this Court."

*Matthews v. Davis*, 191 N.C. App. 545, 551, 664 S.E.2d 16, 20-21 (2008) (internal citations omitted); *see also Pipkin v. Thomas & Hill, Inc.*, 298 N.C. 278, 287, 258 S.E.2d 778, 785 (1979) ("[A] party seeking recovery for losses occasioned by another's breach of contract need not prove the amount of his prospective damages with absolute certainty; a reasonable showing will suffice.").

In the case *sub judice*, while some portion of the trial court's award of damages to Plaintiff was easily ascertainable based on how many of Plaintiff's lots ready for permitting were not eligible for water credits, we are mindful of the "general rule [that] the injured party in a breach of contract action is awarded damages which attempt to place the party, insofar as possible, in the position he would have been in had the contract been performed." *Strader v. Sunstates Corp.*, 129 N.C. App. 562, 571, 500 S.E.2d 752, 757 (1998). In that regard, even if Plaintiff had 63% of the water credits at its disposal, it would not have been able to take advantage of the reimbursement for lots that it was ultimately unable to develop or sell. Moreover, where the Reimbursement Contract between the parties and the Town was set to expire on 21 October 2012, it is also possible that if any number of the Plaintiff's lots indeed became permit-ready but only after that date, the Town would not honor the certificates— whether for water or sewer credits—thereafter. While the trial court did find as a fact that "[i]n some instances the Town of Cary has agreed to extend the reimbursement date for developers who have unsold lots in their subdivisions," it made no findings as to how many of Plaintiff's lots were ready for permitting after the water credits ran out. Nor does the trial court's judgment contain findings reflecting the status of the remaining lots for which Plaintiff's builders would potentially be seeking permits. Additional findings related to the probability that such would actually occur on or before 21 October 2012, or if after that date, whether the Town would indeed extend the reimbursement date of the certificates, would have provided the reasonable certainty necessary to support the trial court's damages award at full value of the potential credits Plaintiff's builders could have tendered had Defendant's exhaustion of the water credits not prohibited them from doing so.

This is not the typical case involving prospective damages— often related to lost profits—where the injured party can only give an approximation of its losses. The amount of damages themselves is not speculative, as the value of each credit that would have been available to Plaintiff can indeed be proved to an absolute mathematical

certainty because the figures involved in the calculation were established prior to any breach by Defendant. It is, rather, the occurrence of certain contingencies that will determine what "position [Plaintiff] would have been in had the contract been performed." While we disagree with Defendant's contention that Plaintiff's claim has been brought prematurely because its remaining certificates have not yet expired—for Plaintiff already recognized that Defendant's breach posed an actual threat to its ability to recover 63% of the development costs—we do agree that the trial court's failure to find that Plaintiff would even have a market for its remaining certificates seriously undermines the reasonable certainty of the judgment. The effect of the trial court's assumption—without making supportive findings—that certain contingencies would happen requires Defendant to "reimburse" Plaintiff for losses that may not be incurred. This creates a potential windfall for Plaintiff at Defendant's expense, where the trial court's judgment allots Plaintiff the cash value for credits that may have never materialized into their money equivalent. In awarding the entire lump sum value of the water credits lost by Plaintiff, the judgment makes no distinction between the damages actually suffered, in the case that Plaintiff had to reimburse its builders for water credits that were not honored by the Town, from those which may not occur. We cannot discern from the findings of fact or conclusions of law whether the trial court considered the level of certainty attached to Plaintiff's prospective damages. Thus, we likewise cannot determine whether the award was based on a reasonable certainty that the contingencies which would lead to such losses would indeed happen or whether that unspecified portion of the award reflecting future damages was based on mere conjecture. Therefore, we remand this case to the trial court for findings demonstrating the amount of damages Plaintiff has actually incurred, based on the number of permitted lots for which no water credit was available, and findings determining whether Plaintiff can establish, to a reasonable degree of certainty, that its builders would have been able to avail themselves of credits exhausted by Defendant for the remaining unsold lots or uncompleted construction thereon. Where the Reimbursement Contract also provided for cash reimbursement, up to the parties' full costs, in the case that other developers want to "tap into" the lines funded by Plaintiff and Defendant, the trial court may also consider evidence related thereto in determining the reasonable probability that Plaintiff would have been completely reimbursed.

## II.

**[2]** Defendant argues that Plaintiff's proper cause of action here was for rescission of the parties' contract based on mutual mistake of fact. However, Defendant never raised this issue before the trial court. *See* N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."). In fact, the only reference to mutual mistake in the record was made by the trial court itself, where the trial judge stated at the close of the parties' evidence:

> Gentlemen, you all created a business mess I guess you all expect me to settle. . . . .

> I mean, you put a system in place and honestly worked on it and gave it a lot of thought, effort, and it seems to me tried to be fair to each other, and the way in which you created this situation, as we said, by kind of front-end loading the credits so both of you would get your money back quicker, ended up in unintended and unanticipated consequences that benefited one more than the other and adversely affected the other, so.

> And if over time, in an ideal world, you know, things get developed and credits get paid and all that, perhaps nobody gets harmed, but right now, we don't have a clue if that will work, so.

> I think, unfortunately, I'm required to sort of take the black letter law and lay it down over top of these facts to determine what the rights and obligations of the parties are, if it fits. It may not even fit.

> It *comes close to kind of a mutual mistake, but it's not quite a mutual mistake. Not quite. Not quite.*

Defendant never requested rescission based upon the theory of mutual mistake. As such, Defendant cannot now raise this issue, and we dismiss this argument.

In light of the foregoing, we affirm the conclusion that Plaintiff had an enforceable, oral contract with its builders such that damages based on Defendant's receipt of excessive water credits can be properly awarded, but we remand the judgment for further findings specifically determining the damages Plaintiff has suffered thus far, for findings related to the certainty of damages that may later arise, and

for entry of judgment for the amount of damages which has been established with reasonable certainty.

Affirmed in part; Remanded in part.

Judges BRYANT and STROUD concur.